UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                        )
JUSTICE E. AINOOSON,                    )
                                        )
              Petitioner,               )
                                        )
        v.                              )      CIVIL ACTION
                                        )      NO. 11-11002-WGY
BRUCE GELB,                             )
                                        )
              Respondent.               )
_____ )


MEMORANDUM AND ORDER

YOUNG, D.J.                                   September 30, 2013

## I.   INTRODUCTION

     Justice E. Ainooson ("Ainooson") was convicted of second-

degree murder, carrying a firearm without a license, and

possession of a firearm without a federal identification card in

October 2007 after a jury trial in the Massachusetts Superior

Court (the "Superior Court"), sitting in and for the County of

Plymouth.  Resp't's Mem. Law Opp'n Pet. Writ Habeas Corpus

("Habeas Opp'n") 1-2, ECF No. 19; see also Commonwealth v.

Ainooson, No. 08-P-1592, 2010 WL 3564858, at *1 (Mass. App. Ct.

Sept. 15, 2010).  After appealing his convictions in the

Massachusetts courts, Ainooson filed a petition for a writ of

habeas corpus seeking relief on four grounds: (1) the

prosecution's closing argument violated his constitutional right

to remain silent; (2) the jury instructions were confusing and denied him due process; (3) the cumulative effect of the errors at his trial, including an allegedly coercive supplemental jury instruction, denied him due process; and (4) legally inconsistent verdicts violated the Fifth, Sixth, and Fourteenth Amendments of the Constitution.  Pet. 28 U.S.C. § 2254 Writ Habeas Corpus Person State Custody ("Pet.") 7-11, ECF No. 1.

### A.   Procedural Posture

On October 27, 2007, Ainooson received a life sentence in state prison for his conviction of second-degree murder.  Pet.; Resp't Bruce Gelb's Answer ("Answer") ¶¶ 2-3, ECF No. 9.  The Superior Court also sentenced Ainooson to a concurrent term of between two and three years for carrying a firearm without a license and declared that he had served the one-year sentence for possession of ammunition without having a firearm identification card.  Id.  Ainooson appealed the convictions to the Massachusetts Appeals Court (the "Appeals Court"), which affirmed the Superior Court's judgment on September 15, 2010.  Ainooson, 2010 WL 3564858, at *4.  The Massachusetts Supreme Judicial Court (the "Supreme Judicial Court") denied Ainooson's application seeking further appellate review, Commonwealth v. Ainooson, 458 Mass. 1108 (2010) (mem.), and the Supreme Court denied his petition for a writ of certiorari on April 25, 2011, Ainooson v. Massachusetts, 131 S. Ct. 2157 (2011) (mem.).

Ainooson filed a petition for habeas corpus relief pro se in this Court on June 6, 2011, Pet., and thereafter submitted a supporting memorandum, Mem. Supp. Pet'r's Writ Habeas Corpus ("Mem. Habeas"), ECF No. 13. The Commonwealth answered Ainooson's petition, Answer, and manually filed a Supplemental Answer containing a transcript of Ainooson's trial, as well as the briefs associated with his appeals to Massachusetts courts, see Supplemental Answer; see also Notice Filing Supplemental Answer, ECF No. 10. The Commonwealth also submitted a memorandum opposing Ainooson's petition, Habeas Opp'n, and Ainooson responded thereto, Pet'r's Reply Resp't's Mem. Law Opp'n Pet'r's Mem. Law Supp. Pet'r's Writ Habeas Corpus ("Resp. Habeas Opp'n"), ECF No. 22.

**B.    Factual Background**[1]

On the afternoon of June 17, 2005, Calvin Stewart ("Stewart") went to the Country Foods store in Brockton, Massachusetts, with his girlfriend LaSheena Terrio ("Terrio") and friend Jamell Spurill ("Spurill"). See II Supplemental Answer, Tab 19, Trial Tr. vol. III, 169, Oct. 19, 2007. They were parked in the Country Foods store's parking lot. Terrio wanted cigarettes, which Spurill purchased for her because she

---

[1] The Appeals Court did not make findings of fact, so the following facts are largely derived from the trial transcript. See Jackson v. Thompson, No. 06-CV-10066-RGS, 2007 WL 869512, at *1 n.1 (D. Mass. Mar. 21, 2007) (Stearns, J.).

lacked identification.  Id. at 170-71.  When Spurill returned to the car, he sat in the back seat of the car behind Stewart, who was seated in the front passenger seat.  Id. at 171.  Terrio was in the driver's seat.  Id.

Around this same time, Brockton School Police Officer Mark Noone ("Noone") was driving home from work after his shift ended at 3 PM.  I Supplemental Answer, Tab 18, Trial Tr. vol. II, 178-79, Oct. 18, 2007.  He was driving in his personal vehicle, still in uniform, when he stopped at a red light on West Ashland Street near the Country Foods store.  See id. at 178, 181.  As Noone was waiting for the light to turn green, he heard loud gunshots to his right and saw a man, later identified as Ainooson, firing a gun into a parked car in front of the convenience store.  Id. at 182, 184-85.  After hearing the initial gunshot, Noone saw Ainooson fire three or four more shots in a row as Ainooson moved backwards along the sidewalk. Id. at 183, 197.  Noone then saw Ainooson come towards him, tuck his gun in his pants, and jog away from where he had fired the gun.  Id. at 183.  Noone jumped out of his blue Ford Explorer and yelled, "Police.  Don't move."  Id. at 179, 184:14-15. Noone testified that Ainooson "looked at [him] with a very surprised look and took off running up the street."  Id. at 184:15-17.  After a foot chase, Noone caught Ainooson as he was attempting to jump a fence in the backyard of a house on West

Ashland Street.  Id. at 189.  Ainooson told Noone that he had tossed his gun, which other officers later located in the same backyard.  Id. at 190-93.

While Ainooson admits that he fired the shots that ultimately killed Stewart and wounded Spurill, the reason that Ainooson fired them is unclear.  Ainooson asserts that Stewart and Spurill accused him of having a close relationship with someone called Cooked and were calling him a bitch.  II Supplemental Answer, Tab 21, Trial Tr. vol. V, 59-60, Oct. 23, 2007.  He was fed up and walked away from the car in which Stewart and Spurill were seated.  Id. at 60.  According to Ainooson, Stewart called him "nigger" as he was walking away; when Ainooson turned around, he saw what looked like a small black revolver pointed at him.  Id. at 61.  After Stewart fired at him once, Ainooson says he pulled out his gun and started firing back.  Id. at 63-64.  Ainooson testified that he aimed at the front passenger seat area, where Stewart was seated.  See id. at 65.

According to Terrio, Ainooson stood by the passenger side of the car and "had words" with Spurill.  Trial Tr. vol. III, 173:5; see id. at 173.  They both said "[w]hat's up" to each other, id. at 173:8-9, before Ainooson walked away, turned around, and then started shooting into the passenger seat window.  Id. at 173-74.  Terrio said that Stewart had a gun

located near the console in between the car's driver and passenger seat and that Spurill did not have a weapon.  See id. at 173, 174.  Terrio said she ducked during the shooting before grabbing Stewart's gun located between the console and the seat. Id. at 175-76.  She saw Stewart in the passenger seat with his eyes closed and started to chase Ainooson with the gun.  Id. at 177.  She stopped the chase and returned to the parking lot when she saw a police officer chasing Ainooson.  Id. at 177-78.  At that point, Spurill had moved to the driver's seat and was driving out of the parking lot.  Id. at 178.  Terrio said she then ran through a little path near the Country Foods store and threw the gun under a truck before calling her brother to take her to the hospital.  Id. at 179-80.  Stewart's gun was never recovered, and Terrio testified that his gun was not fired that day.  Habeas Opp'n 7; Trial Tr. vol. III, 182.  Terrio also testified that Stewart had cocaine with him in the car that day. Trial Tr. vol. III, 168.

At trial, Spurill denied any knowledge of a gun or cocaine in the car.  Id. at 64.  He also denied seeing the gunman.  Id. at 70.  When the shots were fired, Spurill said he ducked in the back seat of the car but was shot in the arm and in the side. Id. at 69.  He said he was sitting behind the driver's seat when he heard five or six shots fired.  Id.  After he drove out of the parking lot with Stewart in the passenger seat, Spurill

could tell that Stewart had been shot and was nudging him to try to get him to talk.  See id. at 74.  Rather than drive to a nearby ambulance station, id. at 75, Spurill drove to Green Street, where he and Stewart were living, id. at 74-75; Habeas Opp'n 7.  He got someone's attention to call an ambulance or the police.  See Trial Tr. vol. III, 76-77.  Stewart was not moving or responding to Spurill.  Id. at 77.

Officer Alcides Fortes arrived at Green Street and saw Spurill, wounded and pacing, and Stewart, who "had blood all over him and . . . was slumped over the seat."  II Supplemental Answer, Tab 20, Trial Tr. vol. IV, 31:4-5, Oct. 22, 2007; see id. at 30, 31.  Stewart had four gunshot wounds; two wounds were located on the left side of the chest, one was on the right upper-back, and one was in the right forearm.  Id. at 160.  A medical examiner testified that the two gunshot wounds in the chest were the cause of Stewart's death.  Id. at 170.

Ainooson's gun was a 380 High Point medium caliber semi-automatic hand gun with an extended magazine that held ten cartridges.  Id. at 210-11.  When the police recovered the gun, it had four live rounds in the magazine and a round that had been ejected from the chamber of the gun.  Id. at 197.  A ballistics expert found five spent cartridges during the investigation -- three were in the Country Foods store parking lot and two were found in the victims' car.  See id. at 193-95,

7

198, 200, 215.  The expert determined that all of the spent cartridges had been fired from Ainooson's gun.  See id. at 215-16.  Based on the location of those spent casings, the expert opined that Ainooson had fired the gun in close proximity to the front passenger window of the car.  Trial Tr. vol. V, 11.  The expert also recovered five bullets, some of which were damaged.  Habeas Opp'n 8.  Due to the damage, the expert could not positively state that each bullet was fired from Ainooson's gun, but he did conclude that all of the bullets were "consistent with a 380-caliber spent projectile," Trial Tr. vol. IV, 219:8, or consistent with having been fired from the type of gun that Ainooson owned.  Id. at 216-20.

Ainooson's trial attorney argued that Ainooson acted in self-defense when he shot Stewart.  See, e.g., II Supplemental Answer, Tab 22, Trial Tr. vol. VI, 30-31, Oct. 24, 2007.  No forensic evidence directly supported Ainooson's version of his encounter with Stewart and Spurill.  Ainooson, 2010 WL 3564858, at *1.

On October 26, 2007, the jury acquitted Ainooson of charges of assault and battery by means of a dangerous weapon and of armed assault with intent to murder.  Habeas Opp'n 2.  They found him guilty of second-degree murder, carrying a firearm without a license, and possession of a firearm without a firearm identification card.  Id.

### C.  Federal Jurisdiction

This Court has federal jurisdiction over Ainooson's petition pursuant to 28 U.S.C. section 2254.

## II.  ANALYSIS

### A.  Antiterrorism and Effective Death Penalty Act

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court can entertain an application for a writ of habeas corpus for a person in custody pursuant to a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  "[O]n federal habeas review, the level of deference owed to a state court decision hinges on whether the state court ever adjudicated the relevant claim [for habeas relief] on the merits or not."  Clements v. Clarke, 592 F.3d 45, 52 (1st Cir. 2010).  If the claim was adjudicated on the merits, this Court can only grant the writ of habeas corpus if the state court adjudication resulted in: (1) "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1)-(2).  In contrast, a state court decision that fails to address a petitioner's federal claim on the merits

does not receive this so-called AEDPA deference, and this Court reviews those claims de novo.  See Clements, 592 F.3d at 52.

## B.    Ground One: Alleged Violation of Petitioner's Right to Remain Silent

### 1.    Procedural Default

Ainooson complains that various improper remarks in the prosecutor's closing denied him due process and a fair trial and infringed upon his Fifth Amendment right to remain silent.  Mem. Habeas 9, 15.  This Court is precluded from conducting habeas review, however, if the Appeals Court's decision rejecting Ainooson's federal claims rested on an independent and adequate state law ground.  See Horton v. Allen, 370 F.3d 75, 80 (1st Cir. 2004) (citing Coleman v. Thompson, 501 U.S. 722, 729 (1991)).  Principles of comity and respect for state court judgments undergird this rule.  House v. Bell, 547 U.S. 518, 536 (2006).  Habeas review is barred regardless of whether the state law ground is procedural or substantive.  Pina v. Maloney, 565 F.3d 48, 52 (1st Cir. 2009).

A state court's ruling that a defendant procedurally defaulted his claims because of his "failure to object at trial[] is an independent and adequate state ground . . . so long as the state court consistently applies its contemporaneous objection rule and has not waived it in the particular case by basing the decision on some other ground."  Horton, 370 F.3d at

80-81; see also Mass. R. Crim. P. 22 (contemporaneous objection rule).  Massachusetts has "routinely enforced" its contemporaneous objection rule.  Burks v. Dubois, 55 F.3d 712, 716 (1st. Cir. 1995); see also Janosky v. St. Amand, 594 F.3d 39, 44 (1st. Cir. 2010) ("We have held, with a regularity bordering on the monotonous, that the Massachusetts requirement for contemporaneous objections is an independent and adequate state procedural ground, firmly established in the state's jurisprudence and regularly followed in its courts.").

Ainooson failed to object to the statements in the prosecutor's closing argument that he now contends violated his constitutional rights.  Ainooson, 2010 WL 3564858, at *1.  Thus, the Commonwealth argues that this Court must deny habeas review of Ainooson's claims because the Appeals Court rejected them on an "independent and adequate state procedural bar."  Habeas Opp'n 11.  In response, Ainooson contends that the Appeals Court waived the procedural state ground for affirming his conviction because it did not "clear[ly] and express[ly]" state that it was relying on an independent state ground when its decision "primarily [rested] on federal law."  Resp. Habeas Opp'n 2 (citing Coleman, 501 U.S. at 734).  Ultimately, the rationale

employed by the Appeals Court[2] determines whether there is
procedural default.

The Appeals Court began its analysis of Ainooson's appeal
by declaring that the "prosecutor's argument spans twenty-three
pages of the transcript and defense counsel made no objections."
Ainooson, 2010 WL 3564858, at *1.  The court then briefly
analyzed the merit of Ainooson's several complaints about the
prosecutor's closing argument, concluding that "there was no
error in the prosecutor's closing argument, and if there was
error, there was no substantial risk of a miscarriage of
justice."  Id. at *2 (emphasis added).  The First Circuit has
consistently held that Massachusetts courts' discretionary
analysis of petitioners' procedurally forfeited claims under a
miscarriage-of-justice standard does not waive an independent
and adequate procedural state ground for affirming a conviction.
See, e.g., Janosky, 594 F.3d at 44 ("The [Massachusetts court's]
discretionary miscarriage-of-justice review does not amount to a
waiver of the state's contemporaneous objection rule."); Lynch
v. Ficco, 438 F.3d 35, 45 (1st Cir. 2006) (identifying the
failure to raise a contemporaneous objection as an independent

---

[2] The Supreme Judicial Court denied Ainooson's application
for further appellate review.  Thus, this Court's analysis
centers on the "last reasoned decision," that of the Appeals
Court, to understand the basis of the state court judgment.
Malone v. Clark, 536 F.3d 54, 63 n.6 (1st Cir. 2008) (quoting
Gunter v. Maloney, 291 F.3d 74, 80 (1st Cir. 2002)) (internal
quotation mark omitted).

and adequate state ground for the dismissal of a petitioner's
due process claim where a Massachusetts court had analyzed it
under the miscarriage-of-justice standard); Horton, 370 F.3d at
81 (holding that Massachusetts Supreme Judicial Court's "limited
review" of petitioner's claim under miscarriage-of-justice
standard does not waive independent and adequate state ground
applying contemporaneous objection requirement).  Thus, the
Appeals Court clearly relied on an independent and adequate
state ground when it: (1) stated the basis of forfeiture of
Ainooson's claims -- his failure to object; and (2) briefly
analyzed those forfeited claims only to determine if there was a
substantial risk of a miscarriage of justice.  Ainooson, 2010 WL
3564858, at *1-2.  Consequently, Ainooson cannot demonstrate
waiver, and his federal habeas claims regarding the prosecutor's
improper closing are procedurally defaulted.[3]

---

[3] In addressing the propriety of the prosecutor's closing
remarks at Ainooson's trial, the Appeals Court incorporated the
Commonwealth's brief by reference.  Ainooson, 2010 WL 3564858,
at *2 ("For the above reasons, and for the reasons given in the
Commonwealth's brief at pages 16-27, we conclude that . . .
there was no substantial risk of a miscarriage of justice.").
The Commonwealth's brief clearly relied on a state procedural
default when it explicitly limited its analysis to a
discretionary review of Ainooson's claims under the miscarriage-
of-justice standard because of his failure to object.  See
Supplemental Answer, Tab 6, Br. Commonwealth 16-27; see also
Tart v. Commonwealth, 949 F.2d 490, 496 (1st Cir. 1991); Burke
v. Spencer, No. 05-12266-DPW, 2011 WL 5882183, at *8 (D. Mass.
Nov. 23, 2011) (Woodlock, J.) (holding that procedural default
barred habeas review where state court decision relied on
reasoning in Commonwealth's brief, which argued that

## 2.  Cause for Procedural Default: Ineffective-Assistance-of-Counsel Claim

When a habeas petitioner has procedurally defaulted his claim under state law, habeas review is barred unless he can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or else demonstrate that the failure to consider the claim will result in a fundamental miscarriage of justice." Glacken v. Dickhaut, 585 F.3d 547, 551 (1st Cir. 2009).  "[T]here must be some objective factor external to the defense which impeded counsel's efforts to comply with the State's procedural rule" to demonstrate cause.  Lynch, 438 F.3d at 46 (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)) (internal quotation marks omitted).  Trial counsel's failure to preserve a claim for review in state court can establish cause for the default if such ineffectiveness amounts to a constitutional violation pursuant to Strickland v. Washington, 466 U.S. 668 (1984). Lynch, 438 F.3d at 46.  Ainooson contends that his trial

---

petitioner's claim was both "procedurally defaulted and meritless").  Thus, the Appeals Court's decision complies with the requirement of clear and express reliance on a state procedural default as stated in Coleman v. Thompson, 501 U.S. 722.

counsel's failure to object to the prosecutor's closing amounted
to such ineffective assistance of counsel.[4]  See Mem. Habeas 23.

As a threshold matter, a habeas petitioner aiming to
"excuse his procedural default by showing ineffective assistance
of counsel . . . must have first presented the ineffective
assistance claim to state court," Lynch, 438 F.3d at 46, which
Ainooson has done in his brief to the Appeals Court, see
Supplemental Answer, Tab 3, Br. & App. for Appellant 25
("Defense counsel had a duty to object to so unfair [a closing]
argument, and to the extent his failure may deprive Mr. Ainooson
of his entitlement to plenary review, that omission was
constitutionally ineffective . . . .").  Further, the Appeals
Court addressed the ineffective-assistance-of-counsel claim.
See Ainooson, 2010 WL 3564858, at *2 ("Finally, we do not
consider the defendant's meritless assertion that trial
counsel's failure to object to the prosecutor's closing argument
may have deprived him of plenary review.").  Although the
Appeals Court did not explain its rationale for rejecting
Ainooson's "meritless" ineffective-assistance claim, see id.,
there is a presumption that a state court has "adjudicated the
[federal] claim on the merits in the absence of any indication
or state-law procedural principles to the contrary," Harrington

---

[4] Aside from an ineffective-assistance-of-counsel claim,
Ainooson makes no other arguments to demonstrate cause for the
procedural default.  See generally Mem. Habeas.

v. Richter, 131 S. Ct. 770, 784-85 (2011).  Because the state procedural bar for lack of contemporaneous objection does not apply to Ainooson's ineffective-assistance-of-counsel claim and the Appeals Court did not cite any law in resolving that claim, the presumption that the federal claim was adjudicated on the merits stands.  See Lyons v. Brady, 666 F.3d 51, 54 (1st Cir. 2012) (holding that Massachusetts court adjudicated constitutional claim on the merits where that court "concluded that there [was] no merit in [petitioner's] allegations of error," id. (first alteration in original) (quoting Commonwealth v. Lyons, 444 Mass. 289, 290 (2005)) (internal quotation marks omitted), and "did not elaborate on its reasoning" for rejecting the claim, id.), cert. denied sub nom. Lyons v. Mitchell, 133 S. Ct. 1491 (2013) (mem.).

Although alleged constitutional violations adjudicated on the merits typically mandate deferential review under 28 U.S.C. section 2254(d), courts disagree on the type of review that an ineffective-assistance-of-counsel claim addressed in state court receives when it is raised in habeas review to excuse a procedural default.  Janosky, 594 F.3d at 44-45.  For reasons similar to those enunciated in Janosky v. St. Amand, 594 F.3d 39, this Court will review Ainooson's ineffective-assistance-of-counsel claim de novo in determining whether it suffices to show cause for his procedural default.  See id. at 45 (applying de

16

novo review, rather than AEDPA deference, in cause-and-prejudice
analysis where de novo review is more favorable to petitioner
and petitioner's claim fails under either standard); see also
Fischetti v. Johnson, 384 F.3d 140, 154-55 (3d Cir. 2004)
(deciding that AEDPA establishes a "statutory high hurdle" for
granting substantive relief but not for the "issue of cause," in
part because the Supreme Court did not apply AEDPA deference in
evaluating cause for procedural default in Coleman v. Thompson,
501 U.S. 722).

A petitioner has "cause" for procedural default if he can
demonstrate his counsel was constitutionally ineffective under
Strickland.  Murray, 477 U.S. at 488.  To demonstrate
ineffective assistance of counsel under the Sixth Amendment,
Ainooson must show that his counsel's representation "fell below
an objective standard of reasonableness" measured by "prevailing
professional norms," Strickland, 466 U.S. at 688, and that there
is a "reasonable probability that, but for counsel's
unprofessional errors, the result of the proceeding would have
been different," id. at 694; see also Harrington, 131 S. Ct. at
788 ("Surmounting Strickland's high bar is never an easy task."
(quoting Padilla v. Kentucky, 130 S. Ct. 1473, 1485 (2010))
(internal quotation marks omitted)).  "Reviewing courts must
indulge a strong presumption that counsel's conduct falls within
the wide range of reasonable professional assistance and

17

represents sound trial strategy." Jewett v. Brady, 634 F.3d 67,

75 (1st Cir. 2011) (quoting Strickland, 466 U.S. at 689)

(internal quotation marks omitted).

Ainooson argues that his lawyer's failure to object to "an

improper closing may constitute ineffective assistance." Mem.

Habeas 23; see Resp. Habeas Opp'n 5. While Ainooson has

numerous complaints regarding the impropriety of the

prosecutor's closing, he mainly accuses the prosecutor of using

his post-arrest silence to impeach his exculpatory testimony in

violation of Doyle v. Ohio, 426 U.S. 610 (1976). See Mem.

Habeas 10-11. Thus, in evaluating whether Ainooson's counsel

was objectively reasonable, this Court ought determine if the

prosecutor committed a Doyle violation.[5]

In Doyle, two defendants were charged with selling

marijuana. 426 U.S. at 611. The defendants both testified that

they had been framed because they were attempting to buy, not

---

[5] In analyzing whether various comments in the prosecutor's
closing argument amount to a Doyle violation, this Court assumes
that Ainooson received Miranda warnings following arrest. See
Greer v. Miller, 483 U.S. 756, 763 (1987) ("[A]bsen[t] the sort
of affirmative assurances embodied in the Miranda warnings, the
Constitution does not prohibit the use of a defendant's
postarrest silence to impeach him at trial." (second alteration
in original) (quoting Fletcher v. Weir, 455 U.S. 603, 607 (1982)
(per curiam)) (internal quotation marks omitted)). While
Ainooson's receipt of Miranda warnings is not mentioned in the
petitioner's fact statement or stated elsewhere in the record,
it is implicit in his argument. See Mem. Habeas 10 ("Mr.
Ainooson did not give any statements nor did he give any type of
post miranda statements . . . ."). Further, the Commonwealth
has not contested Ainooson's receipt of those warnings.

sell, the marijuana.  At both of their trials, the prosecutor
tried to impeach their exculpatory story during cross-
examination by suggesting that if the defendants were really
innocent, they would have told their story to the police rather
than remain silent when they were interrogated.  See id. at 613-
14.  The Supreme Court held that "the use for impeachment
purposes of [the defendants'] silence, at the time of arrest and
after receiving Miranda warnings, violated the Due Process
Clause of the Fourteenth Amendment."  Id. at 619.

Ainooson suggests that the following portions of the
prosecutor's closing violated Doyle:

> Desperation.  That's what you heard out of the mouth
> of this murderer right here yesterday. . . .
>
> And what this is and what you saw yesterday is a
> desperate pathetic attempt to come in here and talk
> his way out of a first-degree murder [--] that's
> what's going on here, ladies and gentlemen. . . .
>
> This novel that he's giving you, this magic book, does
> anybody believe that for one second . . . .
>
> Two years later, [Ainooson] marches up there and gives
> you that pathetic desperate story from a guy who
> carries around a gun . . . .
>
> [A]nd this goes to when we jump back and forth to
> evaluate that nonsense that [Ainooson] came up with
> yesterday . . . .
>
> [A]nd look at the context of what you heard yesterday.
> That story was given to you in the context the
> Commonwealth had produced and collected and analyzed
> that evidence.  And then two years later, this guy
> rolls in here and gives you that account. . . .

> Mr.    Ainooson's    statement[,]    that    self-serving
> statement he gives in here two years later.

Trial Tr. vol. VI, 31:16-18, 32:24-33:4, 33:24-34:1, 34:7-9,
36:1-3, 36:18-22, 41:21-23 (emphases added); see also Mem.
Habeas 12.  In particular, Ainooson takes issue with the
prosecutor's repeated emphasis of the fact that his exculpatory
testimony came two years after the incident.  Mem. Habeas 10.

Here, the prosecutor's indirect reference to Ainooson's
silence following arrest is much more subtle than the typical
Doyle violation.  See, e.g., Doyle, 483 U.S. at 614 n.5, 620
(deciding that Doyle violation occurred where prosecutor asked
defendant why he did not tell the police he had "been set up" if
he was innocent); see also Wainwright v. Greenfield, 474 U.S.
284, 287 n.2, 295 (1986) (observing Doyle error where prosecutor
argued that defendant's request to speak to an attorney after
hearing his Miranda rights undermined his insanity defense).
For example, the Sixth Circuit held that there was a Doyle error
where the prosecutor asked the defendant during cross-
examination if his preceding testimony was the first time he had
given his version of events since the relevant incident had
occurred five months ago and argued in closing, "I find it a
little peculiar[] [that] [the defendant] [is] alleging self-
defense, [but] it [took] [the defendant] five months to so
indicate."  Mackey v. Russell, No. 02-4237, 2005 WL 2175926, at

*5 (6th Cir. 2005); see id. at *4-5.  The Sixth Circuit reasoned

that "[t]here can be little question that such direct references

to [the defendant's] post-Miranda silence are clear violations

of the standard elucidated in Doyle."  Id. at *5.  In contrast,

here the prosecutor does not explicitly state that Ainooson's

trial testimony was the first time he publicly shared his self-

defense story.  Nonetheless, the prosecutor's repeated and

artful insinuations that Ainooson was silent leading up to his

exculpatory trial testimony during a full-fledged attack on the

credibility and veracity of that testimony is precisely the type

of impeachment tactic penalizing silence against which Doyle

sought to protect.

     The prosecutor initiated his closing by arguing that

Ainooson's testimony claiming self-defense was fabricated in an

attempt to "talk his way out of a first-degree murder."  Trial

Tr. vol. VI, 33:1-2.  Granted, the prosecutor's claim of recent

fabrication was not just rhetoric, see id. at 37:6-9, but also

supported by specific examples of opportunities for Ainooson to

have tailored his testimony to fit with the Commonwealth's

evidence, see, e.g., id. at 35:4-6.  Under Portuondo v. Agard,

529 U.S. 61 (2000), the prosecutor's suggestion in summation

that Ainooson had the opportunity to tailor his testimony in

response to the government's evidence by virtue of the fact that

he testified last -- after the Commonwealth had presented its

21

case -- passes constitutional muster.  See id. at 63, 67-68, 73

(holding that it is constitutional for prosecutor to draw

attention to fact that defendant had "opportunity to hear all

other witnesses testify and to tailor his testimony

accordingly," id. at 63, when it is "natural and irresistible"

for jury to note opportunity to tailor in evaluating credibility

of defendant who testifies, id. at 67-68).  The prosecutor,

however, exceeded the scope of constitutional argument when he

used Ainooson's two years of silence following arrest to impeach

his testimony.  See, e.g., Trial Tr. vol. VI, 36:18-22 ("[A]nd

look at the context of what you heard yesterday.  That story was

given to you in the context the Commonwealth had produced and

collected and analyzed that evidence.  And then two years later,

this guy rolls in here and gives you that account . . . .")

(emphasis added)); id. at 41:21-23 ("Mr. Ainooson's statement[,]

that self-serving statement he gives in here two years later.").

An obvious purpose of emphasizing that Ainooson gave his

account two years after he was arrested is to suggest that

Ainooson's testimony is a fabrication because he did not give it

earlier.  Thus, without explicit mention of Ainooson's silence

following arrest, the prosecutor accomplished that which Doyle

forbids: using Ainooson's post-Miranda silence to impeach his

exculpatory testimony by suggesting that Ainooson would have

shared his version of events earlier if it were true.  See

<u>Doyle</u>, 426 U.S. at 618 (noting unfairness of allowing defendant's silence to be used to "impeach an explanation subsequently offered at trial" given <u>Miranda</u> warning's assurances that arrestee's silence will not be used against him or her).  The First Circuit has admonished that the privilege against self-incrimination should be "given a liberal application."  <u>Coppola</u> v. <u>Powell</u>, 878 F.2d 1562, 1566 (1st Cir. 1989) (quoting <u>Maffie</u> v. <u>United States</u>, 209 F.2d 225, 227 (1st Cir. 1954)); <u>see also</u> <u>id.</u> (noting that the privilege against self-incrimination ought not be "whittle[d] . . . down by the subtle encroachments of judicial opinion" (quoting <u>Maffie</u>, 209 F.2d at 227)).  Thus, this Court cannot agree with the Appeals Court's statement that the prosecutor "did not intrude in any way on the defendant's right to remain silent before or during trial."  <u>Ainooson</u>, 2010 WL 3564858, at *1.

Even though the prosecutor's closing comments at Ainooson's trial amount to a <u>Doyle</u> error, this Court need not decide whether Ainooson's trial counsel was deficient for failing to object because no prejudice resulted from the <u>Doyle</u> error.  <u>See</u> <u>Strickland</u>, 466 U.S. at 697 ("The object of an ineffectiveness claim is not to grade counsel's performance.  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").  To demonstrate prejudice,

Ainooson must show that, but for his attorney's errors, there is a reasonable probability that the outcome of his proceedings would have been different.  See Strickland, 466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Malone v. Clarke, 536 F.3d 54, 64 (1st Cir. 2008).  This Court must consider the totality of the evidence before the jury when assessing the prejudicial impact of trial counsel's errors.[6]  Turner v. United States, 699 F.3d 578, 584 (1st Cir. 2012).

Ainooson cannot show that there is a reasonable probability that the outcome would have been different had his attorney objected to and sought a curative instruction for the prosecutor's closing statements because of the strength of the evidence supporting his conviction.  See Kirwan v. Spencer, 631 F.3d 582, 591-92 (1st Cir. 2011) (holding that there was no prejudice under Strickland where "evidence against [the defendant] was overwhelming," id. at 591); see also Coulson v. Johnson, No. 01-20083, 2001 WL 1013186, at *16 (5th Cir. Aug. 7, 2001) (per curiam) (determining that there was no prejudice under Strickland for trial counsel's failure to object to Doyle

---

[6] See Ruth A. Moyer, To Err is Human; To Cumulate, Judicious: The Need for U.S. Supreme Court Guidance on Whether Federal Habeas Courts Reviewing State Convictions May Cumulatively Assess Strickland Errors, 61 Drake L. Rev. 447, 466-67 (2013) (observing circuit split on whether to cumulate counsel's errors when determining prejudice under Strickland).

24

violation where "evidence of [the petitioner's] guilt, although circumstantial, was compelling"). Here, an off-duty police officer witnessed Ainooson fire a series of shots, tuck his gun into his pants, and jog away. Trial Tr. vol. II, 183-84. Other witnesses corroborated the police officer's version of events. See Trial Tr. vol. III, 256-57; Trial Tr. vol. IV, 8-17. Further, no forensic evidence supports Ainooson's claim of self-defense, Ainooson, 2010 WL 3564858, at *1; the victim had four gunshot wounds, including one in his right upper-back, Trial Tr. vol. IV, 160:18-23. All five shell casings found on the scene were fired by Ainooson's gun, id. at 215:24-216:1-2, and the ballistics expert determined that the gun was likely fired in close proximity to the victim based on the location of some of the shell casings, see Trial Tr. vol. V, 11:11-18. Because Ainooson cannot demonstrate prejudice under Strickland, he cannot demonstrate cause and prejudice for the procedural default. Thus, this Court is barred from reviewing whether the prosecutor's reference to Ainooson's post-Miranda silence violated due process.

While Ainooson's chief complaint regarding the prosecutor's closing involves allusions to his post-Miranda silence, he also takes issue with various other aspects of that closing, all of

which were also procedurally defaulted for failure to object.[7]

Most, if not all, of Ainooson's additional complaints regarding

the prosecutor's closing lack merit.   Ainooson presents a bare

bones ineffective-assistance claim, merely stating that his

trial lawyer "must be held ineffective for failing to object to

such an unconstitutional and prejudicial closing."  Resp. Habeas

Opp'n 5; see also Mem. Habeas 23 ("[F]ailure to object to an

improper closing may constitute ineffective assistance.").   The

cases that Ainooson lists to support his ineffective-assistance-

of-counsel argument are inapposite and not binding on this

Court.   For example, Ainooson references Harris v. Blodgett, 853

F. Supp. 1239 (W.D. Wash. 1994), where the court deemed trial

counsel constitutionally ineffective for various reasons, none

of which include a failure to object to a prosecutor's

prejudicial closing argument.   Id. at 1267 (deciding that the

"failure to object to improper prosecutorial argument" did not

create "a reasonable probability that, but for [the] deficiency,

the result . . . would have been different").   Thus, even

---

[7] Examples of some of the claimed errors include (1) the
prosecutor's feigned surprise at Ainooson's claim of self-
defense, Mem. Habeas 18; (2) the prosecutor's statement that
Spurill, whom Ainooson also shot, lacked gun violations was
misleading because a gun charge that post-dated the incident had
been excluded, id. at 18-19; and (3) the prosecutor's
misstatement of the burden of proof on self-defense when he
argued that Ainooson's claim of running away from gun-toting,
"little" Terrio is not believable, Trial Tr. vol. VI, 46:21;
Mem. Habeas 21.

construing his argument liberally, Ainooson has failed to meet the "heavy burden" that he bears on an ineffective-assistance claim. Lema v. United States, 987 F.2d 48, 51 (1st Cir. 1993); see also Glacken, 585 F.3d at 551 (determining that short footnote in petitioner's brief suggesting that trial counsel's failure to object to jury instruction constitutes ineffective assistance was "plainly insufficient" to demonstrate cause for procedural default).

Finally, Ainooson does not argue that the procedural default of his claims would result in a fundamental miscarriage of justice, see Mem. Habeas; Resp. Habeas Opp'n, as he does not claim that he is actually innocent of the offenses of which he was convicted, see Simpson v. Matesanz, 175 F.3d 200, 210 (1st Cir. 1999) ("It is clear that for habeas purposes the federal 'fundamental miscarriage of justice' standard means that petitioner must establish actual innocence.").

Thus, for the foregoing reasons, this Court is estopped from reviewing the merits of Ainooson's federal claims regarding the prosecutor's closing.

### C.   Ground Two: Jury Instructions' Alleged Violation of Due Process

#### 1.   No Procedural Default

In his second ground for habeas relief, Ainooson argues that the jury instructions given at his trial were

27

"contradictive and confusing" and violated his rights to due

process and a fair trial.  Pet. 8.  The Commonwealth argues that

this Court is barred from reviewing Ainooson's second ground for

relief because Ainooson "failed to object to this complained of

error at trial" and thus forfeited review of that claim.  Habeas

Opp'n 16.  In other words, the Commonwealth contends that the

Appeals Court rejected Ainooson's claim based on the

"independent and adequate state procedural bar of preservation"

for failure to comply with the contemporaneous objection rule.

Id. at 16-17.  For a procedural default to bar habeas review,

however, "[t]he state court must actually have relied on the

procedural bar as an independent basis for its disposition of

the case."  Harris v. Reed, 489 U.S. 255, 261-62 (1989)

(emphasis added) (quoting Caldwell v. Mississippi, 472 U.S. 320,

327 (1985)) (internal quotation marks omitted).  On habeas

corpus review of petitioner's claims, this Court must assume

that "there is no independent and adequate state ground for a

state court decision when the decision 'fairly appears to rest

primarily on federal law, or to be interwoven with . . . federal

law, and when the adequacy and independence of any possible

state law ground is not clear from the face of the opinion.'"

Coleman, 501 U.S. at 735 (quoting Michigan v. Long, 463 U.S.

1032, 1040-41 (1983)).

In this case, the basis of the Appeals Court's brief decision on this ground is arguably ambiguous.  That court noted in passing that Ainooson's "lengthy argument is made for the first time on appeal" before addressing the "gravamen" of his federal claim -- that the self-defense instructions impermissibly shifted the burden of proving self-defense to him.  Ainooson, 2010 WL 3564858, at *2.  The Appeals Court concluded that the parts of the jury instructions that correctly stated the burden of proof outweighed the impact of any error in the self-defense instruction.  See id.  Although the Appeals Court only cited state law for this proposition, see id., a cursory examination reveals that its conclusion was derived from federal principles.  Specifically, the Appeals Court relied upon Commonwealth v. Torres, 420 Mass. 479 (1995), aff'd sub nom. Torres v. Dubois, 174 F.3d 43 (1st Cir. 1999).[8]  The Torres court squarely addressed the claim that jury instructions violated federal due process by applying Supreme Court precedent.  See 420 Mass. at 488-91 (deciding that a court assessing the constitutionality of challenged jury instructions ought evaluate those instructions in the context of the charge as a whole to see if the entire charge provided a correct interpretation of

---

[8] The Appeals Court quotes a statement from Commonwealth v. Williams, 450 Mass. 879 (2008), in support of its conclusion.  Ainooson, 2010 WL 3564858, at *2 (citing Williams, 450 Mass. at 882-85).  Williams, in turn, relies on Torres.  See Williams, 450 Mass. at 882-83.

the law (citing Estelle v. McGuire, 502 U.S. 62, 72 (1991);

California v. Brown, 479 U.S. 538, 541 (1987))); see also Torres

v. Dubois, 174 F.3d 43, 46 (observing that it is "abundantly

clear" that the Supreme Judicial Court's decision in Torres

relied primarily on federal law in addressing the defendant's

due process claim).  Thus, the Ainooson court invoked federal

law when it determined that the entire charge at Ainooson's

trial established the correct burden of proof.  See 2010 WL

3564858, at *2; cf. Manisy v. Maloney, 283 F. Supp. 2d 307, 312-

13 (D. Mass. 2003) (Stearns, J.) (deciding that the

Massachusetts Appeals Court did not waive procedural default

where it relied only on state law in addressing a defendant's

federal claims).

Because the Appeals Court's decision on Ainooson's second

ground for habeas relief appears to rely on or be interwoven

with federal law, the "Harris presumption" applies.  See

Coleman, 501 U.S. at 734-35.  That presumption calls for this

Court to assume that federal law was the basis for the Appeals

Court's decision unless that court "clearly and expressly"

stated its reliance on an independent and adequate state law

ground.  Id. at 735.  In Harris v. Reed, 489 U.S. 255, the

Supreme Court observed that a state court's declaration that the

petitioner's allegations "could have been raised [on] direct

appeal" may have "laid the foundation" for that court finding

30

procedural default.  Id. at 266 (alteration in original)
(internal quotation marks omitted).  The Supreme Court, however,
ultimately held that the statement fell short of the "explicit
reliance on a state-law ground" that is required to show
procedural default where the state court decision relies upon
federal law.  Id.

     Similar to the state court decision discussed in Harris,
the Appeals Court in Ainooson merely noted that Ainooson had
made his "lengthy argument [about the model jury instructions]
. . . for the first time on appeal."  2010 WL 3564858, at *2.
While this statement could also lay the foundation for that
court's finding procedural default, it is insufficient, in and
of itself, to constitute a clear and express statement of
procedural default under Harris and Coleman.  See Delaney v.
Bartee, 522 F.3d 100, 103-04 (1st Cir. 2008) (deciding that a
state court decision may not have relied clearly and expressly
on procedural default where it simply pointed out a potential
basis for procedural default while also addressing the merits of
the defendant's federal claims).  Since there was no procedural
default of Ainooson's second ground of habeas relief, this Court
can reach the merits of his allegations.

          **2.   AEDPA Deference Applies to Petitioner's Due
               Process Claim**

31

Under AEDPA, a deferential standard of review applies if the Appeals Court adjudicated Ainooson's due process claim on the merits. See 28 U.S.C. § 2254(d); Lyons, 666 F.3d at 53-54. Here, where the state court explicitly declined to ignore binding precedent that had already rejected similar due process claims, see Ainooson, 2010 WL 3564858, at *2, the court adjudicated Ainooson's federal claims on the merits, see Harrington, 131 S. Ct. at 784-85 (noting the presumption that state courts adjudicate federal claims on the merits in the absence of any "state-law procedural principles to the contrary," id. at 785).[9]   Thus, AEDPA's deferential standard of review applies.

---

[9] Ainooson relies on Cone v. Bell, 556 U.S. 449 (2009), to persuade this Court to review his second ground for habeas relief de novo. Resp. Habeas Opp'n 9-11. In Cone, the Supreme Court decided that a habeas petitioner's federal claim warranted de novo review because a post-conviction state court failed to reach the merits of his federal claim when it erroneously concluded that the claim had already been adjudicated in prior proceedings pursuant to a full and fair hearing. See id. at 466, 472. The Cone decision, however, is inapposite.

In Ainooson, the Appeals Court noted that Ainooson's "argument [was] misdirected to this court" because it had renounced the authority to decline to follow governing precedent. 2010 WL 3564858, at *2. Ainooson interprets this statement as a refusal to make a decision and, thus, reach the merits of his federal claim. Resp. Habeas Opp'n 7-8. While indirectly worded, the Appeals Court's decision to follow governing precedent that has already rejected analogous, if not identical, due process claims was very much on the merits. Unlike the state court in Cone that incorrectly determined that a petitioner's claims had already been adjudicated in prior state proceedings, the Ainooson court correctly observed that

The overarching theme of Ainooson's second ground for habeas relief is that the jury instructions at his trial failed to follow Supreme Court precedent because they impermissibly shifted the burden of proof to him.  See Resp. Habeas Opp'n 13-15.  Under AEDPA, this Court can grant Ainooson's application for habeas corpus relief only if the adjudication of his claims in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  This standard is highly deferential, "demand[ing] that state-court decisions be given the benefit of the doubt . . . and that the [habeas petitioner] show that the state court's ruling . . . was so lacking in justification that there was an error . . . beyond any possibility of fairminded disagreement."  Lyons, 666 F.3d at 54 (quoting Butler v. O'Brien, 663 F.3d 514, 518 (1st Cir. 2011)).  In other words, "if it is a close question whether the state decision is in error, then the state decision cannot be an unreasonable application."  Healy v. Spencer, 453 F.3d 21, 26 (1st Cir. 2006) (quoting McCambridge v. Hall, 303 F.3d 24, 36 (1st Cir. 2002)) (internal quotation mark omitted).  Moreover, even if the decision was unreasonable, Ainooson is still not

_____

other litigants had raised analogous claims, which created binding precedent mandating rejection of Ainooson's argument.

eligible for habeas relief unless he can show that "the error
had a substantial and injurious effect or influence in
determining the jury's verdict." Lyons, 666 F.3d at 54 (quoting
Shuman v. Spencer, 636 F.3d 24, 30 (1st Cir. 2011)) (internal
quotation mark omitted).

### a. Self-Defense Instructions

Ainooson argues that the jury instructions incorrectly
stated the law of self-defense in a way that relieved the
government from proving every element of second-degree murder
beyond a reasonable doubt and, therefore, violated In re
Winship, 397 U.S. 358 (1970). See Mem. Habeas 32. In Winship,
the Supreme Court held that the "Due Process Clause protects the
accused against conviction except upon proof beyond a reasonable
doubt of every fact necessary to constitute the crime with which
he is charged." 397 U.S. at 364. The elements of second-degree
murder in Massachusetts are (1) an unlawful killing and (2)
malice. Commonwealth v. Walczak, 463 Mass. 808, 817 (2012)
(Lenk, J., concurring). Self-defense, however, negates the
unlawfulness of a killing. Id. Thus, where the evidence
indicates that a killing might be justified because the
defendant acted in self-defense, the Commonwealth must prove
beyond a reasonable doubt that the defendant did not act in
self-defense in order to obtain a murder conviction. Id.; see
also Commonwealth v. Williams, 450 Mass. 879, 882 (2008) (noting

34

that "[w]here the evidence raises a question of self-defense,"
the government must disprove self-defense beyond a reasonable
doubt).  Otherwise, the government has failed to prove that the
killing was unlawful -- the first element of second-degree
murder -- beyond a reasonable doubt.

    The trial judge correctly instructed the jury that "where
there is evidence that the defendant may have acted in self-
defense, . . . the Commonwealth must prove beyond a reasonable
doubt that the defendant did not act in self-defense."  Trial
Tr. vol. VI, 86:2-6.  Ainooson takes issue with the trial
judge's explanation of self-defense, which stated that "[a]
person may not use force in self-defense until he's availed
himself of all proper means to avoid physical combat."  Id. at
84:16-18 (emphasis added); see Mem. Habeas 30.  While this
instruction correctly conveys the second of three elements that
constitute self-defense under Massachusetts law, see
Commonwealth v. Souza, 428 Mass. 478, 486 (1998), Ainooson
argues that the instruction failed to inform the jury that he
was only required to retreat from combat if he could do so in
"complete safety," Mem. Habeas 31.  He suggests that the failure
to include this gloss meant that the Commonwealth was relieved
from proving beyond a reasonable doubt that he "could have
safely retreated."  Id. at 32; see id. at 36 ("The erroneous

instruction completely eradicated the Commonwealth's burden on [a] vital element [of self-defense].").

Ainooson cites no Massachusetts law to support his contention that he must avoid using deadly force only if a "completely safe" alternative is available to him.  See generally Mem. Habeas.  The Supreme Judicial Court has interpreted the second element of self-defense, the requirement that a defendant use all proper means to avoid physical combat before resorting to deadly force.  That court has announced that the requirement does "not impose an absolute duty to retreat regardless of personal safety considerations; an individual need not place himself in danger nor use every means of escape short of death before resorting to self-defense.  He must, however, use every reasonable avenue of escape available to him." Commonwealth v. Pike, 428 Mass. 393, 398 (1998) (emphasis added) (citations omitted).  Thus, this self-defense element seeks to identify whether a defendant had "reasonable means of escape before acting in self-defense." Id. at 399.  The safety of other alternatives is a consideration in adjudging the reasonableness of an individual's act of self-defense; requiring the Commonwealth to prove that Ainooson could have retreated in complete safety actually increases its burden of proof under Massachusetts law.

In <u>Francis</u> v. <u>Franklin</u>, 471 U.S. 307 (1985), the Supreme Court indicated that when an individual alleges that jury instructions relieve the government of its burden of persuasion in a criminal trial, the threshold step in the constitutional analysis is to determine whether the challenged portions of the instructions are constitutionally infirm or burden-shifting. <u>See</u> <u>id.</u> at 313-14.  Here, Ainooson chiefly complains about the absence of relevant, explanatory instructions.  Although Ainooson's trial judge did not specifically define what constitutes "proper means" of avoiding physical combat, he stated factors that the jury ought consider in evaluating whether Ainooson properly acted in self-defense:

> In considering the issue of reasonableness of any force used by the defendant, you may consider evidence of the relative physical capabilities or [sic] combatants, how many persons were involved on each side, the characteristics of any weapons used, the availability of room to maneuver, or any other factors you deem relevant to the reasonableness of the defendant's conduct under the circumstances.

Trial Tr. vol. VI, 85:11-18.  These instructions adequately communicated that a key inquiry in determining whether Ainooson acted in self-defense was the reasonableness of his use of deadly force instead of retreat or escape.  Thus, the jury instructions' correct statement of the law of self-defense in Massachusetts did not dilute the government's burden of disproving self-defense in violation of due process --

particularly where those instructions repeated the government's burden of disproving self-defense beyond a reasonable doubt. See id. at 83:18-24, 86:2-10.  As a result, the Appeals Court's rejection of Ainooson's constitutional claims with regard to the self-defense instructions was neither contrary to nor an unreasonable application of clearly established federal law.

### b.   Heat-of-Passion Instructions

Ainooson also argues that the jury instructions incorrectly implied that he bore the burden of proof on mitigation by heat of passion.  In Massachusetts "[i]f a person kills another in the heat of passion, which is occasioned by . . . provocation, or in sudden combat, . . . the killing is designated manslaughter and not murder because of the mitigating circumstances."  Walczak, 463 Mass. at 819 (alteration in original) (quoting Commonwealth v. Acevedo, 427 Mass. 714, 716 (1998)) (internal quotation marks omitted).  These mitigating circumstances negate malice, an element of second-degree murder. See Acevedo, 427 Mass. at 716; see also id. at 715-16 ("Malice and adequate provocation are mutually exclusive.").  Thus, where evidence raises the possibility that a defendant acted in the heat of passion, the Commonwealth must prove beyond a reasonable doubt that the defendant did not act in the heat of passion to support a jury finding of second-degree murder.  Id. at 716. Ainooson specifically charges that despite the "various warnings

38

that the government must disprove provocation or sudden combat,"
the definitions of heat of passion by provocation and sudden
combat implied that he had the burden of persuasion as to those
mitigating circumstances.  Mem. Habeas 25.

In reviewing the Appeals Court's rejection of Ainooson's
due process claim, this Court must determine whether that
judgment is contrary to governing Supreme Court precedent in
Winship and Francis.[10]  In doing so, this Court must first decide
if the challenged part of the jury instruction creates a
mandatory inference that places a burden on the defendant or
reduces the Commonwealth's burden of persuasion in violation of
Winship.  See Hill v. Maloney, 927 F.2d 646, 648-649, 649 n.3
(1st Cir. 1990) (applying analysis set out in Francis to alleged
burden-shifting jury instructions).  If that language "relieves
the State of its burden of persuasion on an element of an
offense, the potentially offending words must be considered in
the context of the charge as a whole."  Francis, 471 U.S. at
315.  The entire charge is reviewed to determine if "there is a
reasonable likelihood that the jury has applied the challenged

---

[10] In Winship, the Supreme Court announced the bedrock
principle that requires the government to prove each element of
an offense beyond a reasonable doubt to support a conviction.
See 397 U.S. at 364.  In Francis, as well as Sandstrom v.
Montana, 442 U.S. 510 (1979), the Supreme Court set forth the
analytic framework for determining whether jury instructions
comply with Winship.  See Francis, 471 U.S. at 313-15;
Sandstrom, 442 U.S. at 520-24.

instruction in a way that violates the Constitution." <u>Estelle</u>,

502 U.S. at 72 (quoting <u>Boyde</u> v. <u>California</u>, 494 U.S. 370, 380

(1990)) (internal quotation mark omitted).  If so, this Court

must consider whether the error was "harmless beyond a

reasonable doubt." <u>Hill</u>, 927 F.2d at 649.

Starting the analysis with the specific language that

Ainooson challenges, the portion of the instructions to which he

objects is reproduced below:

> The provocation must be such that a reasonable person
> <u>would have become sufficiently provoked</u> and <u>would not
> have cooled off</u> by the time of the killing[,] and that
> the defendant <u>was so provoked and did not cool off</u> at
> the time of the killing.  In addition, <u>there must be a
> causal connection</u> between the provocation, the state
> of the heat of passion and the killing.  The killing
> <u>must follow the provocation before there's sufficient
> time for the emotion to cool</u>.  It <u>must be the result
> of the state of mind induced by the provocation</u> rather
> than a pre-existing intent to kill or injure . . . [.]
>
> . . . Whether the contact [of physical conduct] <u>is
> sufficient</u> will depend on whether a reasonable person
> under similar circumstances <u>would have been provoked</u>
> to act out of emotion <u>rather than reasoned reflection</u>.
> The heat of passion <u>must also be sudden</u>, that is a
> killing <u>must have occurred</u> before a reasonable person
> <u>would have regained control</u> of his emotions . . . [.]
>
> . . . In sudden combat, physical contact, even a
> single blow, <u>may amount to reasonable provocation</u>.
> What [sic] other contact <u>was sufficient</u> will depend on
> whether a reasonable person under similar
> circumstances would have been provoked to act out of
> emotion rather than reasoned reflection.  The heat of
> passion induced by sudden combat <u>must also be sudden</u>.
> That is a killing <u>must have occurred</u> before a
> reasonable person would have regained control of his
> emotions, and the defendant <u>must have acted</u> in the
> heat of passion . . . [.]

Mem. Habeas 26-27 (first and fifth alterations in original)
(quoting Trial Tr. vol. VI, 80:18-81:4, 81:13-19, 82:2-12).

This language is excised from the portion of the jury
instructions that defines or explains heat of passion by
provocation, as well as heat of passion by sudden combat.  See
Trial Tr. vol. VI, 80:11-82:13.  Ainooson argues that the use of
words such as "must" to describe the elements of those
mitigating circumstances suggests that he bore the burden of
proof on mitigation.  Under this reading of the instructions,
the jury would only reach the Commonwealth's burden of
disproving mitigation if they found that Ainooson first met an
affirmative obligation of proving that he acted in the heat of
passion.

Ainooson's interpretation is unnatural and forced.  There
is no statement that the defendant bears the burden of proof on
mitigation in the challenged language.  Read alone, the
highlighted language merely explains the requirements for heat-
of-passion mitigation.  In fact, Ainooson himself describes the
contested language as "definitional instructions," Mem. Habeas
25, which further suggests that a reasonable listener or juror
would interpret the language as just that -- explanatory
definitions of heat-of-passion mitigation without any reference
to the burden of proof.

41

Even if this Court were to find that this language impermissibly shifted the burden of proof -- which is a stretch -- the language must be evaluated in the context of the entire charge.  See Francis, 471 U.S. at 315.  The language that introduces heat of passion by provocation and sudden combat signals that the contested jury instructions are simply definitions of the relevant mitigating circumstances.  See, e.g., Trial Tr. vol. VI, 80:11 ("Heat of passion includes . . . ."); id. at 82:2 ("Sudden combat involves . . . .").  Further, in his explanation of sudden combat and provocation, the trial judge stated at least five times that the Commonwealth is required to prove beyond a reasonable doubt the absence of heat of passion induced by sudden combat or provocation in order to prove malice, an essential element of murder.  See generally id. at 79-83; see, e.g., id. at 82:19-83:2 ("If . . . you find that the Commonwealth has proved beyond a reasonable doubt the elements of murder, except that the Commonwealth has not proved beyond a reasonable doubt the absence of heat [of] passion upon reasonable provocation, or heat [of] passion induced by sudden combat, then you must not find the defendant guilty of murder.").  The repeated instructions on the Commonwealth's specific burden of proof with respect to mitigation are unlike the "general instructions on the State's burden of persuasion and the defendant's presumption of innocence" that the Supreme

42

Court found insufficient to clarify ambiguous language in
Francis.  471 U.S. at 319.  Read in context, it is clear that
the instructions that surround the judge's definitions of
mitigation adequately explained the burden of proof such that
there is no reasonable likelihood that the jury would have
applied the challenged instructions in a way that violates the
Constitution.  Thus, the Appeals Court's decision was not
contrary to established federal law.

> c.   **Complaint about "Consciousness of Guilt" Instruction Is Not Cognizable on Habeas Review**

The trial judge instructed the jury on consciousness of
guilt.  See Trial Tr. vol. VI, 64:20-65:19.  Ainooson argues
that the "improperly given consciousness of guilt through flight
instructions," coupled with unconstitutional instructions
regarding mitigation and self-defense, denied him a fair trial.
Mem. Habeas 27; see Resp. Habeas Opp'n 22.  The instructions on
mitigation and self-defense, however, pass constitutional
muster, see supra section II.C.2.a-b, and Ainooson has not met
the heavy of burden of demonstrating that the consciousness-of-
guilt instructions denied him due process, see Rosado v. Allen,
482 F. Supp. 2d 94, 114 (D. Mass. 2007) (Woodlock, J.) ("Relief
through a habeas corpus petition is proper only where the ailing
[jury] instruction by itself so infected the entire trial that

the resulting conviction violates due process." (quoting
Estelle, 502 U.S. at 72) (internal quotation marks omitted)).

Further, slicing through the general discourse alleging
unconstitutionality, Ainooson's core complaint regarding the
consciousness-of-guilt instructions appears to be a matter of
state law.  See, e.g., Resp. Habeas Opp'n 22.  Ainooson argues
that those instructions were "improper" because he fled from the
crime scene after being fired upon by the victim and then
pursued by the victim's then-girlfriend, Terrio, who was
carrying a gun.  Id.  Under Massachusetts law, however, a trial
judge can give a consciousness-of-guilt instruction where
evidence of flight supports an inference of guilt.  Commonwealth
v. Emeny, 463 Mass. 138, 150 (2012); see also Commonwealth v.
Booker, 386 Mass. 466, 469 (1982) (noting that evidence of
flight is probative of a defendant's guilty state of mind).
While Ainooson maintains that he was fleeing from Terrio, who
testified that she pursued him with a gun, see Resp. Habeas
Opp'n 22, Officer Noone testified that Ainooson began to run
only after he saw the officer yell in full uniform, see Trial
Tr. vol. II, 178; id. at 184 ("I drew my gun on him and said
'Police.  Don't move.'  And he looked at me with a very
surprised look and took off running up the street.").  The
Appeals Court concluded, as matter of state law, that the
consciousness-of-guilt instruction was not in error.  See

44

Ainooson, 2010 WL 3564858, at *3 ("Where there may be different reasons for flight, the jury must determine the actual reason from the circumstances."). Consequently, Ainooson's objection to the consciousness of guilt instruction is not cognizable in habeas. See Estelle, 502 U.S. at 67-68 ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); Rodriguez v. Spencer, 412 F.3d 29, 37 (1st Cir. 2005) ("Federal courts sitting in habeas must accept state court rulings on state law issues."); Exilhomme v. Spencer, No. 08-10552-DPW, 2011 WL 3759219, at *13 (D. Mass. Aug. 24, 2011) (Woodlock, J.) (deferring to state court determination on whether evidence warranted a particular jury instruction when sitting in habeas).

### d.    Ineffective-Assistance-of-Counsel Claim

In addition to claiming that certain portions of Massachusetts's model jury instructions violate due process, Ainooson argues in passing that his trial counsel was ineffective for failing to object to those unconstitutional instructions. Mem. Habeas 40; Resp. Habeas Opp'n 15. The Appeals Court denied Ainooson's claim of ineffective assistance on the merits. See Ainooson, 2010 WL 3564858, at *2; see also Teti v. Bender, 507 F.3d 50, 56 (1st Cir. 2007) ("A matter is 'adjudicated on the merits' if there is a 'decision finally resolving the parties' claims, with res judicata effect, that is

based on the substance of the claim advanced, rather than on a procedural, or other, ground.'" (quoting Sellan v. Kuhlman, 261 F.3d 303, 311 (2d Cir. 2001))).  Because the ineffective-assistance claim presents a mixed question of law and fact, Ainooson can only attain relief if the Appeals Court's decision was an unreasonable application of Strickland.  See Teti, 507 F.3d at 57.  A doubly deferential standard applies in determining whether a state court unreasonably applied Strickland on habeas review.  Jewett, 634 F.3d at 75.

Strickland requires a showing of both deficient performance by counsel and resulting prejudice.  See Smullen v. United States, 94 F.3d 20, 23 (1st Cir. 1996).  To prove deficient performance under Strickland, Ainooson must show that his trial counsel's performance fell below an objective standard of reasonableness.  Strickland, 466 U.S. at 687-88.  Lawyers are under no obligation to make meritless arguments.  United States v. Porter, 924 F.2d 395, 397 (1st Cir. 1991).  Given that this Court has already determined that the challenged jury instructions do not violate due process, Ainooson cannot demonstrate deficient performance based on his trial counsel's lack of objection to those instructions.  See Hurley v. Corbett, No. 11-11871-FDS, 2012 WL 6681892, at *7 (D. Mass. Dec. 20, 2012) (Saylor, J.) (determining that habeas petitioner's trial counsel was not deficient where the counsel had failed to object

to customary state law instructions).  "An insufficient showing

on either prong [of the Strickland test] will defeat an

ineffective assistance-of-counsel claim." Id. at *6.  Thus, the

Appeals Court's decision was a reasonable application of

Strickland.

    **D.   Ground Three: Supplemental Jury Instructions and**
    **Cumulative-Error Effect Allegedly Deprived Petitioner**
    **of Due Process**

    In Ainooson's third ground for habeas relief, he takes

issue with a supplemental jury instruction that he characterizes

as prejudicial and coercive.  Pet. 9.  Specifically, he claims

that the supplemental instruction, along with the cumulative

effect of other errors, violated due process.  Id.  The

instruction's lack of compliance with state law is not a basis

for federal habeas relief.  Estelle, 502 U.S. at 71-72.  "The

only question for [this Court] is 'whether the ailing

instruction by itself so infected the entire trial that the

resulting conviction violated due process.'"  Id. at 72 (quoting

Cupp v. Naughten, 414 U.S. 141, 147 (1973)).  Similar to this

Court's analysis of other portions of the instruction, the

impact of the supplemental instruction is judged in the context

of the jury instructions as a whole and the entire trial record.

See id.

    During deliberations, the jury submitted the following

question to the trial judge: "If the jury cannot agree on murder

47

one or murder two, what is the mandate for consideration of
voluntary manslaughter?  Is the fact that some jurors believe
the charge should be murder one or murder two adequate reason
not to find for voluntary manslaughter?" <u>Ainooson</u>, 2010 WL
3564858, at *3.

The trial judge responded, over defense counsel's
objection:

> I can't answer your question directly but I'm
> going to restate a couple of principles to you.
> First, if the evidence convinces you beyond a
> reasonable doubt that the defendant is guilty of
> criminal offense, you have a duty to find the
> defendant guilty of the most serious offense that has
> been proved beyond a reasonable doubt.  If the
> evidence does not prove beyond a reasonable doubt that
> the defendant is guilty of any offense charged, you
> must find him not guilty.
> Secondly, your verdicts must be unanimous as to
> any charges whether the verdicts be guilty or not
> guilty.  Unless your verdict is unanimous you have not
> reached a verdict as to that charge.
> That's the end of my supplemental instructions.
> If you need further instructions, you'll have to write
> me                   another                   note.

Resp. Habeas Opp'n 25 (quoting Trial Tr. vol. VII, 27).

As an initial matter, the Court considers Ainooson's third
ground de novo, although he does not urge that level of review.
<u>See</u> Resp. Habeas Opp'n 24.  There is no indication that the
Appeals Court considered any constitutional issue when it
concluded that the trial judge's supplemental instruction was
not coercive.  <u>See</u> <u>Ainooson</u>, 2010 WL 3564858, at *3.  The
<u>Ainooson</u> court's reliance on <u>Commonwealth</u> v. <u>Parreira</u>, 72 Mass.

App. Ct. 308 (2008), which considered a similar claimed error of
coercion in supplemental jury instructions without invoking
federal law, confirms that the Appeals Court had no
constitutional principles in mind when it rejected Ainooson's
claim of an "[a]lleged inadequate response to a jury question."
2010 WL 3564858, at *3; see Clements, 592 F.3d at 53 (noting
that federal claim is reviewed de novo in habeas proceedings
where state court relies solely on state standards that do not
implicate federal constitutional issues).  Moreover, Ainooson
has no viable constitutional claim regardless of the standard of
review this Court employs.  See Janosky, 549 F.3d at 45.

     The trial judge's supplemental jury charge did not violate
due process.  Ainooson appears to argue that the jury charge was
unconstitutional because it failed to include "three balancing
elements": (1) members of the jury in both the majority and
minority should be given the opportunity to reexamine their
positions, (2) the jury has the right to fail to come to an
agreement, and (3) the state maintains the burden of proving
guilt beyond a reasonable doubt.  See Mem. Habeas 45; see also
id. at 42 (suggesting that failure to instruct jury on their
right to fail to agree coerced them to reach a verdict).

     Ainooson's constitutional analysis is flawed in several
respects.  For one, while Ainooson derives the three elements
from federal law, United States v. Manning, 79 F.3d 212, 222

49

(1st Cir. 1996), the requirement that a judge convey those elements in a supplemental jury charge does not rise to the level of a constitutional mandate or Supreme Court precedent. Rather, this First Circuit precedent, intended to ameliorate the prejudicial effect of certain supplemental charges, see id., is more protective of defendants than any standards imposed by the Supreme Court, see Lowenfield v. Phelps, 484 U.S. 231, 237-38 (1988) (noting the long tradition of allowing judges to instruct deadlocked jurors to continue deliberations and strive to reach a decision); Allen v. United States, 164 U.S. 492, 501-02 (1896) (holding that no error exists in supplemental charge urging all jurors to reach a verdict if they could do so conscientiously and encouraging those in the minority to reassess their views). As such, Ainooson's argument fails to provide a basis for habeas relief.  See Estelle, 502 U.S. at 68 (stating that federal courts conducting habeas proceedings are limited to deciding whether conviction violates "the Constitution, laws, or treaties of the United States"); Milone v. Camp, 22 F.3d 693, 698 (7th Cir. 1994) (observing that "[f]ederal courts can grant habeas relief only when there is a violation of federal statutory or constitutional law").  Further, the First Circuit rule from which Ainooson makes his constitutional argument is inapplicable to this case because the First Circuit only requires the inclusion of those three elements in a supplemental charge given

to a deadlocked jury.[11]  See Manning, 79 F.3d at 222.  Here, the jurors' question did not convey deadlock or impasse; instead, it merely reflected a request for guidance on how to focus future deliberations when they were split on the degree of the murder charge.  See Ainooson, 2010 WL 3564858, at *3 ("It appears plain, however, that the jury had not yet reached a decision on the murder charge, nor had an impasse been reached.").

Lastly, while the judge's supplemental charge did not directly address when or if the jury should consider voluntary manslaughter, that charge did not "so infect[] the entire trial [such] that the resulting conviction violates due process." Estelle, 502 U.S. at 72 (quoting Cupp, 414 U.S. at 147) (internal quotation mark omitted).  The supplemental charge simply reiterated guiding principles for deliberations and contemplated the possibility that the jurors would reach a "not guilty" verdict.  Moreover, Ainooson's state trial judge was not required to include any additional assurances or clarifications in response to the jurors' question in order to comply with due process.[12]

---

[11] A supplemental charge instructing a deadlocked jury to attempt to reach a verdict is known as an "Allen charge," referencing the Supreme Court decision, Allen v. United States, 164 U.S. 492, that sanctioned such a charge.  See Lowenfield, 484 U.S. at 237-38.

[12] It is worth noting that Ainooson invokes Lowenfield v. Phelps, 484 U.S. 231, in arguing that the supplemental charge was coercive and violated his right to a fair trial.  See Resp.

Ainooson's third ground for habeas relief also makes a cumulative-error argument.  Pet. 9 ("Judges [sic] abuse of discretion through inadequate and prejudicially coercive response to a vital jury question, combined with the cumulative error effect, violated due process."); see Mem. Habeas 45.  This Court has already concluded that none of Ainooson's claimed errors warrant habeas relief.  Given the reasons for rejecting his individual claims, the cumulative effect of the claimed errors also fails to violate due process.  See Crouse v. Dickhaut, No. 07-12004-MLW, 2013 WL 1054845, at *15 (D. Mass. Mar. 13, 2013) (Wolf, J.).  Thus, Ainooson's third ground for habeas relief also fails.

### E.    Ground Four: Inconsistent Verdict Claim Is Not Cognizable on Habeas Review

Federal courts can entertain the extraordinary remedy of habeas relief only for those petitioners who are held in custody

---

Habeas Opp'n 26.  As the First Circuit has commented, "[t]o the extent that Lowenfield . . . constitute[s] clearly established federal law, that law can be summarized as follows: defendants have a right against coerced jury verdicts, and any potential coercion should be measured based on the totality of the circumstances."  Clements v. Clarke, 592 F.3d 45, 57 (1st Cir. 2010).  In determining whether the supplemental charge violated due process, this Court had to review the supplemental charge in the context of the complete jury instructions and entire trial record.  See Cupp, 414 U.S. at 146-47.  Given that this analysis is substantially similar to the totality-of-circumstances analysis enunciated in Lowenfield, further consideration of potential coercion under Lowenfield would be duplicative and is unnecessary.  See also Clements, 592 F.3d at 57 (noting that Lowenfield is "scant precedent on which to hang [a] § 2254 claim" of jury coercion).

"in violation of the Constitution or laws or treaties of the
United States."  28 U.S.C. § 2254(a).  Ainooson pays lip service
to this requirement in his petition, in which he claims that
"[l]egally inconsistent verdicts" violated the Fifth, Sixth, and
Fourteenth Amendments of the Constitution.  Pet. 11.  His
petition explains that he was acquitted of assault charges
against Spurill but convicted of second-degree murder against
Stewart.  See id.  He argues that his testimony stating that he
acted in self-defense makes the verdict inconsistent.  See id.;
Mem. Habeas 44.  But see Ainooson, 2010 WL 3564858, at *3
(noting that verdict was not legally impossible because "the
jury could have concluded there was insufficient evidence to
prove he intended to kill or batter Spurill [in the back seat of
the car] when he fired shots at Stewart, who was sitting in the
front passenger seat").  Even construing this petition
liberally, however, this Court cannot adduce a constitutional
violation from the verdict.  See United States v. Ciampi, 419
F.3d 20, 24 (1st Cir. 2005) ("[P]ro se habeas petitions normally
should be construed liberally in petitioner's favor").

Ainooson's memorandum also fails to elucidate his theory of
constitutional violations based on the purportedly inconsistent
verdict.  If anything, Ainooson himself construes the
inconsistent verdict as either evidence in support of his other
grounds for habeas relief or the result of those alleged errors

53

at his trial.  Compare Mem. Habeas 44 (suggesting that an inconsistent verdict is probative of jury coercion), with id. at 45 (arguing that the cumulative effect of errors at trial "forced mutually exclusive/legally inconsistent verdicts").  The absence of any argument relevant to Ainooson's claimed constitutional violations is likely because the Supreme Court has foreclosed it.  See United States v. Powell, 469 U.S. 57, 65 (1984) (observing that "nothing in the Constitution" mandates protection against an inconsistent verdict in which a jury acquitted a defendant of a conspiracy but convicted her of telephone facilitation of the conspiracy); United States v. Alicea, 205 F.3d 480, 484 (1st Cir. 2000) (cursorily dismissing "straightforward claim" of "internally inconsistent" jury verdict as "essentially unreviewable" in light of Supreme Court precedent).  The Commonwealth has also pointed out Ainooson's failure to harness any argument and Supreme Court precedent in support of the claimed constitutional violations.  See Habeas Opp'n 20 (citing Lockyer v. Andrade, 538 U.S. 63, 71 (2003)). Without a colorable constitutional violation based on the alleged inconsistent verdict, Ainooson's fourth ground for habeas relief must fail.

**III. CONCLUSION**

For the foregoing reasons, Ainooson's petition for a writ of habeas corpus, ECF No. 1, is DENIED.

**SO ORDERED.**

/s/ William G. Young
WILLIAM G. YOUNG
DISTRICT JUDGE